1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18

| | |
|---|---|
| DAVID E. COMBS, | ) Case No. CV 11-3209 JCG |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION AND** |
| | ) **ORDER** |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

19

## I.

20

## INTRODUCTION AND SUMMARY

21      On April 29, 2011, plaintiff David E. Combs ("Plaintiff") filed a complaint

22  against defendant Michael J. Astrue ("Defendant"), the Commissioner of the Social

23  Security Administration, seeking review of a denial of disability insurance benefits

24  ("DIB") and supplemental security income benefits ("SSI"). [Docket No. 3.]

25      On November 8, 2011, Defendant filed his answer, along with a certified copy

26  of the administrative record. [Docket Nos. 11-13.]

27      In sum, having carefully studied, *inter alia*, the parties' joint stipulation and

28  the administrative record, the Court concludes that, as detailed below, there is

1   substantial evidence in the record, taken as a whole, to support the decision of the

2   Administrative Law Judge ("ALJ").  Thus, the Court affirms the Commissioner's

3   decision denying benefits.

## II.

## PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 48 years old on the date of his administrative hearing, is a college graduate.  (*See* Administrative Record ("AR") at 65, 69, 185, 231.)

On November 21 and 28, 2008, Plaintiff protectively filed for DIB and SSI, alleging that he has been disabled since October 25, 2008 based on a crushed ankle, right ankle and foot osteoarthritis, right ankle arthrodesis[1] and fusion, and unsuccessful fusion surgery.  (*See* AR at 19, 122, 185, 196, 225.)

On November 18, 2009, Plaintiff, represented by counsel, appeared and testified at a hearing before an ALJ.  (*See* AR at 65-105.)  The ALJ also heard testimony from Howard Goldfarb, a vocational expert ("VE").  (*Id.*; *see also id.* at 167.)

On March 12, 2010, the ALJ denied Plaintiff's request for benefits.  (AR at 19-38.)  Applying the familiar five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since his alleged onset date.  (*Id.* at 34.)

At step two, the ALJ found that Plaintiff suffers from severe impairments consisting of "status post right ankle injury and arthrodesis."  (AR at 34 (bold omitted).)

At step three, the ALJ determined that the evidence did not demonstrate that Plaintiff's impairments, either individually or in combination, meet or medically

---

[1]   Arthrodesis is the "stiffening of a joint by operative means."  *Stedman's Medical Dictionary* 160 (28th ed. 2006).

1  equaled the severity of any listing set forth in the Social Security regulations.[2]  (AR
2  at 34.)

3      The ALJ then assessed Plaintiff's residual functional capacity[3] ("RFC") and
4  determined that he can perform light work.  (AR at 34.)  Specifically, the ALJ found
5  Plaintiff can:

6              lift and carry up to 10 pounds frequently and 20 pounds
7              occasionally, stand and/or walk 6/8 hours with periodic
8              alternating sitting and standing every 1 hour for 15 minutes, sit
9              6/8 hours, no use of right lower extremity foot controls,
10             occasional ramp/stair climbing, no ladder/rope/scaffold climbing,
11             occasional balancing, stooping and crouching, no kneeling or
12             crawling, avoid concentrated exposure to extreme cold, avoid
13             even moderate exposure to unprotected heights or hazardous
14             machinery and no running or jumping or working on uneven
15             surfaces.

16  (*Id.* at 34-35 (emphasis omitted).)

17     The ALJ found, at step four, that Plaintiff has the ability to perform his past
18  relevant work as a warehouse operations manager.  (AR at 36.)

19     In the alternative, at step five, based on Plaintiff's RFC and the VE's
20  testimony, the ALJ found that there are "jobs existing in significant numbers in the
21  national economy" that Plaintiff can perform, including material clerk and order

22

23     [2]  *See* 20 C.F.R. pt. 404, subpt. P, app. 1.
24
25     [3]  Residual functional capacity is what a claimant can still do despite existing
26  exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155
    n. 5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the
27  ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's
    residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th
28  Cir. 2007).

1   filler, and the unskilled jobs of jewelry repairer, optical lens inserter, and optical
2   assembler.  (AR at 36-37.)  Thus, the ALJ concluded that Plaintiff was not suffering
3   from a disability as defined by the Act.  (*Id.* at 38.)

4        Plaintiff filed a timely request for review of the ALJ's decision, which was
5   denied by the Appeals Council.  (AR at 1-3, 13.)  The ALJ's decision stands as the
6   final decision of the Commissioner.

7                                    **III.**

8                          **STANDARD OF REVIEW**

9        This Court is empowered to review decisions by the Commissioner to deny
10   benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security
11   Administration must be upheld if they are free of legal error and supported by
12   substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as*
13   *amended* Dec. 21, 2001).  If the court, however, determines that the ALJ's findings
14   are based on legal error or are not supported by substantial evidence in the record,
15   the court may reject the findings and set aside the decision to deny benefits.
16   *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*,
17   242 F.3d 1144, 1147 (9th Cir. 2001).

18        "Substantial evidence is more than a mere scintilla, but less than a
19   preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant
20   evidence which a reasonable person might accept as adequate to support a
21   conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d
22   at 459.  To determine whether substantial evidence supports the ALJ's finding, the
23   reviewing court must review the administrative record as a whole, "weighing both
24   the evidence that supports and the evidence that detracts from the ALJ's
25   conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed
26   simply by isolating a specific quantum of supporting evidence.'"  *Aukland*, 257 F.3d
27   at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the
28   evidence can reasonably support either affirming or reversing the ALJ's decision,

                                        4

1    the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.*

2    (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

### IV.

### ISSUE PRESENTED

5    A single disputed issue is presented here:  whether the ALJ properly assessed

6    Plaintiff's credibility.  (Joint Stip. at 4-11, 15-17.)

### V.

### DISCUSSION AND ANALYSIS

9    A.    Plaintiff's Credibility

10   Plaintiff argues that the ALJ "failed to articulate legally sufficient reasons for

11   rejecting" Plaintiff's testimony.  (Joint Stip. at 11.)  Plaintiff also contends that

12   "post-hearing records support" his testimony and he had "further complications and

13   [needed] to have the screws in his ankle removed."  (*Id.*)  Plaintiff claims that in

14   "light of the later evidence, the articulations of the ALJ evaporate and cease to have

15   the type of gravitas that would satisfy" the requisite legal standard.  (*Id.*)

16   1.    The ALJ Must Provide "Clear and Convincing" Reasons For

17   Discounting Plaintiff's Credibility

18   An ALJ can reject a plaintiff's subjective complaint upon (1) finding evidence

19   of malingering, or (2) expressing clear and convincing reasons for doing so.  *Benton*

20   *ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).  The ALJ may

21   consider the following factors in weighing a plaintiff's credibility:  (1) his or her

22   reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or

23   between the plaintiff's testimony and his or her conduct; (3) his or her daily

24   activities; (4) his or her work record; and (5) testimony from physicians and third

25   parties concerning the nature, severity, and effect of the symptoms of which she

26   complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

27   Here, the ALJ did not find evidence of malingering.  (*See generally* AR at 19-

28   38.)  Therefore, the ALJ's reasons for rejecting Plaintiff's credibility must rest on

1     clear and convincing reasons. *See Benton*, 331 F.3d at 1040.

2               2.     <u>The ALJ Properly Rejected Plaintiff's Subjective Complaints</u>

3          The Court is persuaded that the ALJ provided clear and convincing reasons

4 supported by substantial evidence for rejecting Plaintiff's credibility. Six reasons

5 guide this determination.

6          First, the ALJ properly concluded that the objective medical evidence does not

7 support Plaintiff's alleged degree of disability. (AR at 31 (ALJ stating Plaintiff's

8 "subjective complaints and alleged limitations are out of proportion to the objective

9 clinical findings and observed functional restrictions").) Substantial evidence

10 supports the ALJ's conclusion. (*See, e.g., id.* at 641 (treating physician's note, dated

11 August 28, 2008, reporting that Plaintiff "has become more active and occasionally

12 has pain"), 646 (treating physician's note, dated September 16, 2008, indicating

13 Plaintiff "is feeling well overall" and reporting that the "more [Plaintiff] is on [his

14 foot], the better he feels"), 671-72 (treating physician's note, dated August 25, 2009,

15 stating Plaintiff "walks without a limp," "can go on his tiptoes and heels," and "can

16 do a single-leg toe raise" and "[t]here is minimal pain to palpation along the

17 anterolateral ankle"), 730-32 (primary treating physician's progress report, dated

18 September 7, 2010, noting Plaintiff "walks without a limp," "can go on his tiptoes

19 and heels," "can do a single-leg toe raise," and finding no "instability").) While a

20 lack of objective evidence supporting Plaintiff's symptoms cannot be the sole reason

21 for rejecting Plaintiff's testimony, it can be one of several factors used in evaluating

22 the credibility of Plaintiff's subjective complaints. *Rollins v. Massanari*, 261 F.3d

23 853, 856-57 (9th Cir. 2001).

24          Second, the ALJ properly discounted Plaintiff's complaints regarding the

25 severity of his pain as inconsistent with a conservative treatment plan. (AR at 31

26 (ALJ noting Plaintiff "was off all medication by May 2009" and "[i]t is reasonable

27 to assume that, if [Plaintiff] were as disabled as he claims, his doctors would have

28 ordered more aggressive treatment")); *see Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th

1   Cir. 1999) (ALJ properly considered, as part of credibility evaluation, treating
2   physician's failure to prescribe, and claimant's failure to request, medical treatment
3   commensurate with the "supposedly excruciating" pain alleged, and the "minimal,
4   conservative treatment") (citation omitted); *Parra v. Astrue*, 481 F.3d 853, 750-51
5   (9th Cir. 2007) ("We have previously indicated that evidence of 'conservative
6   treatment' is sufficient to discount a claimant's testimony regarding severity of an
7   impairment."). Substantial evidence supports this finding. For instance, Plaintiff
8   testified that he uses a brace on his ankle, but does not use a "cane, crutch, walker,
9   [or] wheelchair." (AR at 78.) He also stated that he "stopped [taking] all pain
10  medication" and did not report any side effects from pain medication when he did
11  use them. (*Id.*) He reported that his only treatment was "an electronic bone
12  stimulator," which he wears at night. (*Id.* at 78-79.)

13        Third, the ALJ properly discounted Plaintiff's subjective complaints based on
14  his non-compliance with his treating physicians' prescribed course of treatment.
15  (AR at 31); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (failure to seek
16  treatment or follow a prescribed course of treatment can cast doubt on sincerity of
17  claimant's pain testimony). For instance, the ALJ noted that Plaintiff "did not stop
18  cigarette smoking as advised by his doctor, and he had a non-union." (AR at 31; *see,*
19  *e.g., id.* at 79 (ALJ stating at hearing that "there was an issue about the non-union
20  possibly due to ongoing cigarette smoking, which is not good for fusions" and
21  Plaintiff responding, "[r]ight"), 682-85 (physician's note, dated December 11, 2008,
22  reporting "[i]t appears the etiology for the patient's nonunion is almost for sure the
23  fact that the patient smoked before the surgery and smoked immediately after the
24  surgery and never stopped smoking" and "[a]ll studies show a very high incidence of
25  nonunions in patient that do not stop smoking and have smoked for long periods of
26  time").)

27        Nor has Plaintiff provided an acceptable reason for not following the
28  prescribed course of treatment. *See Bubion v. Barnhart*, 224 Fed.Appx. 601, 604

1   (9th Cir. 2007) (ALJ properly discounted plaintiff's credibility based on failure to

2   follow prescribed treatment of physical therapy and plaintiff did not provide an

3   acceptable reason for not following prescribed course of treatment); *see also* 20

4   C.F.R. § 404.1530(c).

5        Fourth, the ALJ properly discounted Plaintiff's subjective complaints as

6   inconsistent with his reported activities of daily living.  (AR at 31 (ALJ found that

7   Plaintiff "admitted that he was able to sit around his house all day, and engage in

8   normal activities of daily living that required at least short periods of standing,

9   walking, etc.")); *see Thomas*, 278 F.3d at 958-59 (inconsistency between the

10  claimant's testimony and the claimant's conduct supported rejection of the

11  claimant's credibility); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999)

12  (inconsistencies between claimant's testimony and actions cited as a clear and

13  convincing reason for rejecting the claimant's testimony).  When asked about his

14  daily activities at the administrative hearing, Plaintiff responded, I "[w]atch TV,

15  read, clean the house best I can," and "[w]ork on the computer."  (AR at 81.)

16  Plaintiff also testified that he is able to bathe and shower on his own, get dressed,

17  cook, go to the store on his own, walk around the store, drive, and swim.  (*Id.* at 81-

18  82.)  Plaintiff further stated that he takes naps when he is "bored" or "stir crazy."

19  (*Id.* at 87.)

20       Fifth, the ALJ properly found evidence suggesting Plaintiff's testimony is

21  motivated by financial reasons independent of any legitimate claim of entitlement to

22  benefits.  *See Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir. 1996) (holding that there

23  was a "strong element of secondary gain in this case" justifying the ALJ's negative

24  credibility finding where the claimant sued his employer only after private benefits

25  were terminated and said he planned to work only until his lawsuit settled).  Here,

26  Plaintiff testified that he "feel[s he is] able to do lighter duty work" and received a

27  job offer as a limousine driver, but "couldn't accept it" because his workers'

28  compensation attorney "advised [him] against taking the position, because it might

8

effect [his] Worker's Comp settlement." (AR at 73-74; *see also id.* at 738 (treating physician's note, dated December 29, 2009, indicating Plaintiff "elected to hold off on taking [a job offer] per his attorney's instructions").) Thus, the record supports the inference that Plaintiff had specific pecuniary motives independent of any legitimate claim of entitlement which undermines his testimony.

Finally, with respect to Plaintiff's assertion that "it turns out that [Plaintiff] had the correct handle on his own condition in that the bone did not heal until 2009 and the weight bearing induced pain would not go away until after the removal of the screws shortly after September 2010," (Joint Stip. at 17), the Court finds that the post-hearing records support the ALJ's decision. For instance, although Plaintiff's treating physician noted he "continues to have pain," Plaintiff also remained quite functional less than one month prior to Plaintiff's surgery on August 12, 2010, *e.g.,* his physician noted "it bothers his ankle when he *jumps* around a lot." (AR at 742 (emphasis added).) During his one week post-operation visit on September 16, 2010, Plaintiff's treating physician reported he "has less pain and discomfort" and he is "feeling better." (*Id.* at 727.) To the extent Plaintiff maintains that the ALJ erroneously discounted his subjective complaints by stating Plaintiff "did not require additional surgery," (Joint Stip. at 10), the Court finds any reliance on this reason to be harmless. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004).

Thus, the ALJ provided legally sufficient reasons supported by substantial evidence for discounting Plaintiff's subjective complaints of pain.

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits.

Dated: March 26, 2012 _____

Hon. Jay C. Gandhi

United States Magistrate Judge

9